UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN BUTLER,

                Petitioner,                Case No. 13-14111

                                                      HON. AVERN COHN

v.

MARY BERGHUIS,

                Respondent.

_____/

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner, who is proceeding pro se, is incarcerated at a Michigan correctional facility as a result of his conviction, following a bench trial, of assault with intent to commit murder, M.C.L. § 750.83, felon in possession of a firearm, M.C.L. § 750.224f, and possession of a firearm during the commission of a felony. M.C.L. § 750.227b.  Petitioner was sentenced to 25-to-40 years for the assault conviction, a concurrent term of 3-to-5 years for the felon in possession conviction,  and a consecutive two years for the felony firearm conviction.  Petitioner raises two claims in his petition:  (1) there was insufficient evidence to support the scoring of an offense variable in the sentencing guidelines, and (2) Petitioner's trial counsel was ineffective for failing to challenge the admission of the victim's identification testimony because it resulted from an unduly suggestive photographic procedure.  For the reasons that follow, the petition will be denied for lack of merit.

II.  Background

Marco Sewell testified that he was seated in his car in a parking lot in Detroit when a man suddenly jumped in his back seat.  The man pointed a handgun at this head and demanded Sewell's possessions.  Rather than comply, Sewell moved toward the man who pulled the trigger of the handgun; it jammed.  His assailant ejected the faulty round and a struggle over the handgun ensued outside the vehicle.  During the struggle the assailant's hat fell to the ground.  He fired again, and Sewell was shot in the arm.  The man then jumped in Sewell's car and drove away.

A surveillance camera from the scene showed two people fall out of Sewell's car. One man was holding the arm of the other man.  Police found a hat, a spent casing, and a live round on the ground where Sewell's car had been parked.

DNA analysis was performed on hairs found in the hat.  A year later the DNA profile was determined to match Petitioner.  A photographic lineup procedure was subsequently conducted, and Sewell identified Petitioner as his assailant.

Petitioner testified in his own defense.  He said that he did see Sewell that night, but that he took eighty dollars from a woman in the car to buy crack cocaine and never returned.

In rendering its verdict, the trial court found Sewell's testimony credible and found Petitioner's testimony not to be credible.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising the following claim:

> I. There was insufficient evidence of premeditated intent for Butler to kill the victim to support scoring 50 points for Offense Variable 6.

2

Petitioner filed a pro se supplemental brief, raising the following additional claim:

I. Butler was denied the effective assistance of counsel by his counsel's failure to object or file a motion to suppress the pre-trial photographic array ID used.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. People v. Butler, No. 304447, 2012 WL 6604713 (Mich. Ct. App. Dec. 18, 2012). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. People v. Butler, 494 Mich. 869 (2013).

### III.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

3

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

4

decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be."

Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the

AEDPA, does not completely bar federal courts from relitigating claims that have

previously been rejected in the state courts, it preserves the authority for a federal court

to grant habeas relief only "in cases where there is no possibility fairminded jurists could

disagree that the state court's decision conflicts with" the Supreme Court's precedents.

Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against

extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary

error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5

(1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a

state court] is inconsistent with the presumption that state courts know and follow the

law." Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal

court, a state prisoner is required to show that the state court's rejection of his claim

"was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

Harrington, 131 S. Ct. at 786-87.

IV.  Analysis

A.  Sentencing Claim

In his first claim for relief, Petitioner asserts that his sentencing guidelines were

incorrectly scored. In particular, he asserts that the court erroneously scored points for

an offense variable dealing with whether Petitioner premeditated an intent to kill the

victim. The claim is not cognizable on federal habeas review.

5

It is well-established that "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991).  Any claim by Petitioner that the state court misapplied the Michigan Sentencing Guidelines does not give rise to a habeas claim because it is basically a state law claim.  See Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003).  Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence.  See Shanks v. Wolfenbarger, 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005).  Any claim that the state trial court miscalculated the sentencing guidelines thus does not entitle petitioner to habeas relief.  Welch v. Burke, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999). Accordingly, this claim does not provide a basis for granting habeas relief.

B.  Ineffective Assistance of Counsel Claim

Petitioner's second claim asserts that his counsel was ineffective for failing to move to suppress the victim's identification of Petitioner following an unduly suggestive identification procedure.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner's counsel was ineffective. First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. Id. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial.  Id.

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at

6

690.  The Court's scrutiny of counsel's performance is viewed through a highly deferential lens.  Id. at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id. at 690.  And it is the petitioner who bears the burden of overcoming the presumption that his counsel's actions constituted sound trial strategy.  Id. at 689.

To satisfy the prejudice prong under Strickland, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  Id.  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  Id. at 686.

Here, Petitioner asserts that the photograph of him used in the identification procedure was old and depicted him much younger than the other men in the array. The victim identified his perpetrator as a black male between 35 and 40 years of age. According to Petitioner the other men in the array fit this age range, but because the photograph of him showed him at a much younger age, it unfairly suggested that he was the perpetrator.

Defense counsel's decision not to move to suppress the victim's identification was a result of trial strategy.  The record shows that Petitioner's counsel had, in fact, initially requested a motion seeking to suppress the identification, but at the beginning of trial he withdrew it.  (Doc. 9-5 at p 4).  The decision to forgo the motion to suppress was a reasonable one.  Counsel instead chose to cross-examine the victim on the reliability

7

of his identification.  The photo line-up was admitted at trial as an exhibit.  (Doc. 9-5 at p. 16).  The victim testified that he identified the fifth out of the six men as his assailant. Id.  Defense counsel elicited from the victim the fact that the identification procedure was conducted more than a year after the incident.  Id.  He also elicited testimony that the officer suggested that one of the men depicted was, in fact, his assailant.  Id. Furthermore, because Petitioner had a bench trial rather than a jury trial, defense counsel knew that whether the issue was raised in a pretrial motion or through cross-examination, the court nevertheless would be appraised of the same facts.  The decision to attack the credibility of the identification of petitioner through cross-examination rather than to move to suppress the in-court identification was a reasonable trial strategy that defeats Petitioner's ineffective assistance of counsel claim.

Furthermore, a police investigator testified that he conducted the photographic identification procedure about a year after the incident after he received a report indicating that the DNA found on the hat matched Petitioner.  (Doc. 9-6 at p. 9). The DNA evidence was far more damaging than the identification testimony by the victim. In light of this overwhelming evidence identifying Petitioner as the perpetrator, the admission of the allegedly unreliable identification testimony was harmless error at best.

Accordingly, Petitioner has failed to show that his counsel was ineffective for failing to move to suppress the identification testimony of the victim.  He is therefore not entitled to relief on this claim.

### V.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has

demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. §
2253(c)(2).  To warrant a grant of the certificate, "[t]he petitioner must demonstrate that
reasonable jurists would find the district court's assessment of the constitutional claims
debatable or wrong."  Slack v. McDaniel, 529 U.S. 473 (2000).  The Court finds that
reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims
was debatable or wrong.

## VI.  Conclusion

Accordingly, the petition is DENIED.  The Court also DENIES a certificate of
appealability.  This case is DISMISSED.

SO ORDERED.


 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  January 6, 2015


I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, January 6, 2015, by electronic and/or ordinary mail.


S/Sakne Chami
Case Manager, (313) 234-5160

9